Welcome back. I guess we haven't made much of an impression in the past 10 years. I think it was my late partner at the time, his wonderful former colleague, Ian Higginpott, moved my admission up, and I could hear him say, I knew I made a mistake then. He didn't make very many of them, though. Thank you, Robert. My name is Mark Feldman. I haven't visited you in so far. It's a pleasure to appear to you. I'd like to observe if I may. Mr. Belmont, at the outset, there's some issue about what claims you have preserved. At least to my mind, it looms huge here, in terms of whether or not you actually made a facial attack before, as opposed to an as-applied attack, because Concord County is all over this case, or it may not be all over this case, depending on what claims you have raised. As I look at your complaint, and I guess it's paragraph 20, 21v, on page 13 of the SA85 of the supplemental appendix, it seems to me that there is a facial complaint that is raised, and it's kind of threaded through the complaint. But in any event, from your perspective, where did you raise the facial challenge to the ordinance? Not the as-applied, but the facial challenge to the ordinance? Well, Your Honor, there's a point to it in numerous other paragraphs of the complaint. If I might, Your Honor, this is almost, I don't want to call it false, because, Your Honor, there's not really a dichotomy here between facial and as-applied. This isn't a case where there's a general ordinance, general law, and compliance there. And the plaintiff comes in and says, if that's applied to me, it will be illegal. All of the actions here are directed solely and specifically at ISP. It's one group of ordinances and actions, which we allege in great detail, in the complaint, that are designed to take ISP's private property interests, recognized redevelopment interests in the Tremblay Court property, and hand it over for not even any assertive public purpose. But it's not for ownership purposes, it's for redevelopment purposes. ISP was named as the redeveloper by Lyndon. My question really is, your property is not being taken away by Morris or the municipality of Lyndon. Well, sure, Your Honor, in this sense. We can't do anything with that property. With Morris having been designated as redeveloper, and with the city having authorized itself to commence eminent domain proceedings, condemnation proceedings, at any time, Morris has already asked for those to be commenced. Now, we can't redevelop with that nuclear bomb aimed at us. We can't sell the property to a redeveloper, no one. And we've tried. No commercially responsible person would buy the property that's subject to Morris' rights under the court. What you are looking at here is that Morris has, by city ordinance, been directed to develop your property. I guess that's going to be a huge investment of money. You've already invested a lot of money. And then you anticipate that the city of Lyndon will not simply say to ISP, there you are, nice developed property, but rather will go and seize your property via eminent domain. Is that what you anticipate so far? And that Morris will become the new owner? Your Honor, that could happen, but what we say has happened already is, let me go back. ISP, my client, was designated by Lyndon. That was the right that we had. We were a redevelopment program, but we now have become challenged. I think we understand all that. I'm just trying to figure how Morris gets into the picture and what's going to happen to ISP. It's already what's happened to ISP. We are hostile. We can't use the property. We can't sell the property. We can't redevelop the property because everything is subject to the redevelopment agreement that Morris has signed with Lyndon and the power that Lyndon has given itself to commence eminent domain condemnation proceedings at any time. So it's not anticipated that Morris is going to develop the property and then just leave and leave somebody a bill. It's anticipated that Morris will remain on the property as in some form of ownership? In some form of ownership, some form of redevelopment, that we are entitled, that we were the ones entitled, that we were the ones entitled to go forward with and pick. The city of Lyndon is entitled to choose a developer. Were you always ready, willing, and able to develop the property? Absolutely. Did you have a schedule that you failed to meet? No, there's no assertion of that. And if you take the details back from the complaint to be true, as your honors know you must, at least on this motion, be dismissed. And we weren't dismissed. There's never been an assertion. They can't point to one even though it would be a fact. They can't point to one from color outside. I have one, just one more question. Have you come to learn why Morris was selected as a developer and you were essentially told that you would not be the developer? They have. The city officials have been quite, if you look at our complaint, you'll see that the newspaper in the town of Lyndon, the day after they took their final action, July of 2005, without explanation, after we appeared and spoke for hours, my colleague, Justin Walter, and explained to the city council why the action was unlawful, why there was no public purpose. Why was it unlawful? It was unlawful for these reasons. Was it against any state statute? It was contrary to the United States Constitution, and in the teeth of Kelo. In Kelo, which as your honors know, controversy surrounds it, Kelo, which otherwise expanded state eminent domain, had to make economic development of public use. In that case, notwithstanding the sharp division of whether economic development of my house, of Walmart, is something the state can do and just give me just compensation, what every justice agreed upon and what is stated specifically in the morality opinion, the current and the dissent, is that a state may not take action for no public purpose. It simply benefits one private actor over another. Our contention, and we're quite confident, and apparently they are too, because they've done everything possible to avoid it, is that this was done for moral benefit, that's clear, and for political benefit of political officials for a line. I'd like to leave you with this. Could you state in a very simple statement what your cause of action is? Yes, this is an unlawful taking. What kind of taking? Is this a regulatory taking? Or a physical taking? No, it's not a physical taking. It's a regulatory taking. It sits under the 10 central of knowledge that has been decolonized in this whole man-made plan of logistics in which the regulation directed at us constitutes substantial interference with our distinct investment-backed expectations and is so arbitrary and capricious that it has amounted to a taking. So you're not making you're not purporting to make any physical taking claim in this case. Is your regulatory taking assertion is this in addition to or the same thing as a substantive due process or equal protection claim? It's the same plan. Okay. If that's the same claim, did you ever argue substantive due process or equal protection to the district court? The specific words may not have appeared below it. Aren't specific words really important in what you argue to the district court? Well, you know, Your Honor, Matt, yes they are, but there are two points. Consistently in the first complaint and in the amended complaint we argued that there were violations here on that phase of the 5th and 14th amendments. In the first in the verdict round with almost no argument we had a telephone conference with all respect to the district judge at the end of the telephone conference he said I'm dismissing the complaint because I don't see a taking put in the second we gave a plea to put in an amended complaint. We did and we tried to spell out the taking more forcefully and then the argument shifted to rightness and rightness here which was the ground on which the district court dismissed this case just doesn't fit it was tied to the Supreme Court case in which two things were true that are not true here. One, the complaining plaintiff, I'm talking about Williamson Court, the complaining plaintiff had not exhausted state administrative remedies and so it matters. And how have you exhausted state administrative remedies? Have you exhausted, I thought maybe I misunderstood Williamson but I thought the import of Williamson was you've got to pursue your state remedies to the conclusion. You have a state case pending right now which I understand to be state so you clearly haven't pursued state remedies to their conclusion if there's state I beg to differ. Explain why. We filed a state claim after the district court dismissed our second complaint, the amended complaint specifically against those states as a protective measure. Regardless of your motivation you've got state claims pending now, right? Not by choice. What? They're pending now and they're pending as a protective measure and they've stayed at the request of the defendant. And what is it you've asked the state to give you? We've asked the state to give us substantially the same relief as we seek from this court. And the state has the power to do that, right? It definitely does. Okay. And there's no dispute about that, Your Honor, but there is nothing, nothing that requires us to go to the state court. How about Williamson? Williamson said that if there are state administrative remedies, Williamson was not talking about the state court. Williamson who was complaining part of this, said that a general zoning order as applied to Williamson would violate the due process equal protection of the state. We don't have that. Do you have any case that makes the distinction you're making that says Williamson doesn't talk about state remedies it talks about administrative remedies only you don't have to pursue things in state court? County concrete and blanched road, I'm pretty sure. It says that? Well, I don't know if we have it in those exact words, but it's substantial especially in county concrete. And I would respectfully direct Your Honor in that case in particular as well as blanched road. What are the remedies that you are seeking for the regulatory taking in the state court? We want to It is substantially the same. We want a validation of what Lyndon has done. Yes, we want the ordinance struck down. The ordinance that appointed Morris. Provided that eminent domain proceedings could be commenced against us and triggered whenever Lyndon feels that it... So you're actually open to the taking of your property via eminent domain? We're not. If Your Honor means that we're open to it, that we're a target that they're locked and loaded on us the answer is yes. And in fact, one of the arguments that the other side makes which takes form that you cite is that because Lyndon hasn't issued a piece of paper that says declaration of condemnation they haven't made a final decision. I didn't want to take you too far from the point that we were discussing before which is whether this should really be in state court. Your Honor, let me be as candid as I can. There's nothing that we can do that cannot be done in state court, I gather. Your Honor, this is an attack upon some of the most politically powerful officials in the county of New Jersey. It's an attack on the former mayor of New Jersey. And I say this with all... You're saying county and mayor of the state you're referring to? Of Lyndon. I may have misspoke. It's an attack on the city of Lyndon. It's an attack on the council persons of Lyndon. It's an attack on the former and current mayor of Lyndon. It's an attack on the Union County Improvement Authority which is represented by one of the most politically powerful... Were the ordinances that were passed by the city of Lyndon, the ordinance that created the... that approved a development plan and then the ordinance that appointed Morris done pursuant to New Jersey state law? That's not... Even that's not clearly right. It's been changed so many times. Well, let me ask it another way. Was Lyndon authorized to do what it did under state law? Yes. But not under... I shouldn't say under competition. And the way they did it, Your Honor, if you've read the allegations and the details of the fight, almost speaks volumes about what they knew about the ethical... I gather the appointment of Morris as developer was not a matter that was subject to state bidding laws. No, and they... It should have been subject... If they thought there was any problem... I don't know... If they thought there was a problem... We've spent over $38 million in conjunction with Lyndon, not their money, our money, cooperating with them to put in their redevelopment program to support... We're not attacking their redevelopment program. That is a program we might only agree to. We were present at the creation. We paid for the surveys that Lyndon got to put it together. And we've been working on it. And as I say, we've stuck over $38 million into it, plus gotten turnpike access, etc. And all of a sudden... Yes. All of a sudden, all of this has been recorded. We're out of the sauce. In 2004, the submarine comes up, and we find out that the Morris Company, another private actor, represented by the most politically powerful firm in Union County, which had represented Lyndon when this redevelopment plan began, and that's all of the complaints, have been made in redevelopment. No letter, no open bid. They didn't even go through the pretest as they did in Central Oregon in a case that you probably remember when we sat on the Superior Court against Snell's case against Tesla. When they went through the charade of saying that they were going to condemn the property because they wanted to pull it apart, when what they really objected to was having an immediate rehabilitation facility, and your Honor found sitting there in the Superior Judge that that's a pretext, it was a farce, that it was bad faith. Your Honor said, I don't know if I found any cases that rule out this kind of technical mentality on bad faith, but I'm going to look it up. And it's wrong. Here, they didn't have the guts to make a pretext. They just said, you're done. Let me ask a question. You say in your reply brief, and I want to quote, that ISP has from the inception alleged and argued what in law is known as a facial constitutional challenge to Lyndon's conduct. And I have to say I'm puzzled. What's a facial challenge to conduct? Your Honor, I understand the problem. Help me out then. I will. I, as I said before, in this case, to make distinctions between facial and as it was, in order to try to argue about Williamson, and to create a dichotomy that doesn't exist, it's one set of actions. Either you've got a facial challenge, or you've got an as it was. I mean, we're not making that distinction. That's a distinction in the law. So which are you making? Facial. Right. If that's true, then what do all these background facts have to do with anything? A facial challenge is a challenge to by its terms an ordinance, a statute, a regulation on its face. What does... Don't get me wrong. I think I understand from your briefing and the tenor of your remarks here today that your client is profoundly troubled by, not to put too fine a point on it, looks like political influence resulting in an unwarranted seizure of its property. And I don't mean to denigrate those concerns at all. But we have the responsibility to try to get our arms around what it is you're arguing. And if what you're arguing is indeed a facial challenge and that's it, what does all that background have to do with it? Well, I thought the first part of your argument was about a taking. I mean, if what you're claiming is a taking, whether it's regulatory or physical, aren't you really saying, look, if there's to be a entitled to have the taking comply with law, be for public purpose, and we get just compensation. Isn't that different and distinct from making a substantive due process challenge facially to an ordinance? Well, what we're saying is what the court, the W12 court said. In my book, that there is some action, which I'll read on the first, which you'll respectfully take. I'll read what the Supreme Court said. There is certain government action which is found to be impermissible because it fails to meet the public use requirement or is so arbitrary as to violate due process. That is the end of the inquiry. And was that argument made to the district court? I don't want to speak for my colleagues, but part of the problem I've had with this case is understanding what you're arguing and what you argued in the district court, because it appears from the record, and you could point me to where I'm wrong, and that would be a big help, that the main arguments you're making here, substantive due process and protection kind of arguments, were not the arguments that were presented to Judge Brown. Chief Judge Brown was presented with your assertions about taking. Where did you make to him the arguments that you're making to us? Your Honor, there are certain cases that the other side said we didn't cite Judge Brown specifically, kind of concretely. If you're asking me if I'm sorry that they weren't citing him, the question is yes, but the argument made to Judge Brown, from the beginning, from the first case, and I can come back and show, explain to the brief, that we were seeking to invalidate the action by Linda against us. Now, as the judge came down with a surprising decision in our view, in which he adopted Williamson, which is as far from this case as what we read, we refined our argument on the field to answer that point that the judge raised, relying on a case that has nothing to do with this one. If you planted this case in Kelo, every justice in that court would say, we have been deprived of rights in violation of the 14th and 5th Amendments. The 5th Amendment, the taking clause, doesn't give the right for a government to take. And they said, we're not taking. It only gives the right to a sovereign to take for public use. And then we get into the just compensation clause. We did it only because of that clause that we have the two problems of Williamson. The First Amendment doesn't have such a clause, so we don't worry about a state saying, well, you can't go into federal court if I'm going to block your newspaper from being published because you can always get compensation for it. That would be absurd. But that's what they're saying here. We argue that the reason for all of that kind of information, Judge, that you asked about, that they have made a defense through the fact that they're in this complaint, detailed facts, and mark on a conservative course of conduct in conspiracy with a favored, politically favored private party to strip us of our rights for no public purpose. That is the one thing a government cannot do. Whether you are to have a flyer, facial, whatever the words are used, the government can't bulldoze my house with all respect because it would prefer, and they'd probably be right, that one of you three judges live there instead of me, and my neighbors would probably call the decision. It depends where you live. It certainly does. It certainly does. But I'm serious. What judges make me probably couldn't afford your neighborhood anyhow? I'm waiting for the government to fill me out. But that's the problem. With all respect, we've gotten caught up in semantics about, and I don't mean any disrespect, about facial or flyer. Our point is simple. They come in and strip us of our property rights. We've put tens of millions of dollars into this... This argument that you're making now is not related to the facial challenge that you're making. But the facial challenge is just look at the statute itself and determine whether... It goes to the public purpose, I argue. It goes to the public purpose. It is my whole course of conduct. Even if it was as a flyer and I'm looking for my notes and I know I have it somewhere here. Of course, when I have it, I don't... Well, you don't have a chance to look at them on the books. Let me just ask this, and your time is over and we'll certainly allow your colleagues to go over a bit, but I feel like I've been scratching my head since I first started reading this case, and I understand that a lot of the context that you provided, if I can call it that, is irrelevant to a legal analysis, but it's context which helps me wonder what in the heck is going on here. There's a certain brief you pick up and you read both sides of the case and you say, boy, I'm missing it. There's something else going on here. At least to my perspective, when I read these briefs and looked at this, the first thing I began doing was shake my head saying, what in the heck is this case about? It didn't make any sense. Correct me if I'm wrong, but there's an ordinance that's passed that requires you to enter into a long-term lease, and it defines the term, the minimum term of that lease. The person X, here's Morris, within 180 days of the date of the resolution, the long-term lease has to be for 75 years, and that if that happens and that the redevelopment, here Morris, shall execute a redevelopment within 365 days of the date of the resolution, and then it goes on to provide that failing that, there's an obligation to sell the property, and this I'm not as sure about, sell the property to Morris, and if that sale does not take place, and I think within a certain period of time, the city will then use this eminent domain right to take the property from you. Am I missing something here? Not much, but it's missing is what happened before that. This is, that ordinance is at least the second time the city did the same thing, and Morris didn't negotiate. I thought they negotiated, but you couldn't come to an agreement. Well, there was one time when there was no negotiation at all, and they had lost all the letters from the city saying you can't come to an agreement in this eminent domain. There was another one in which... Is that letter in the record? Yes. That is alleged in the complaint. There's a letter in the record where they say we fail to reach some commitments in the domain. It's alleged in the complaint. I don't believe it's actually in the complaint. Well, we have to accept it. Certainly alleged in the complaint. And the other, the quote, negotiation, such as it was, Morris tried to buy this property back in 98, when he was suddenly resurfaced with the Southern Marines as the new developer of our property where we had been given the right to redevelop, remembering that we had spent $37 million alone on remediation to get the property ready for the redevelopment. Morris' offer was $25 million. Now that's preposterous thought. The thing that I can figure out is that's not what you offered. It's under the price we paid, under the cost we established we incurred for the program. And this is part of a, what we say, is a national agenda, a deliberate and conservative force of conduct to push us after no public reason. I don't want to over-time this. If there were one minute... But your best cause of action then is a regulatory taking. And you are seeking... Invalidated? Are you seeking junk for relief, damages, and things like that? Yes, and that's the relief we want. No public interest in being served on what we're doing. But you want to do that in the district court. You want an actual trial? Your claim, your claim is that the ordinance, and I say the ordinance, by that I mean the last in the series. The ordinance on its face affects a regulatory taking. Yes. I got you? Yes. Okay, I know you have reserved some time and you'll be back for six minutes and my guess is probably more than that. So why don't we hear from the other side and we'll certainly let them go around their time. I know you folks have divided up the time and we may well ask questions of you, Mr. Clark, that properly belong to Mr. Malloy and vice versa. Bear with us on that. Oh, I'm sorry. Okay. So you're up for ten minutes. So we may ask... Okay. Okay, well we may ask questions of you that are better asked of Mr. Clark and vice versa. Any discussion? No discussion. Okay. ... How can there be any just compensation for public taking, governmental taking for a private purpose? How can you just compensate? The government decides that Judge Padova, who lives down at the end of my street, prefers my view of the sunset to his view, so the government comes in and takes my property and gives it to Judge Padova. You're saying I have to ask for just compensation? ... ... ... ... What is the remedy? ... ... I want my house. I don't want compensation. I want my house.  ... ... ... ... ... ... ... Isn't that what he's asking? Isn't it ripe at the time of the governmental action? ... ... ... ...  ... ... ... ... ... ... Well, that's on the issue of public purpose, isn't it? ... ... ... ... ... ... It sounds like you were, in fact, describing ISP's case, which is that they are challenging the ordinance because it did result in a regulatory taking.